UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELO M. LEVI, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:12-cv-00909-JAD-GWF |
| ) | |
| vs. ) | **FINDINGS AND** |
| ) | **RECOMMENDATION** |
| CAROYN W. COLVIN, Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Plaintiff Angelo M. Levi's Complaint for Review of Final Decision of the Commissioner of Social Security (#3), filed on August 27, 2012 which denied his application of social security disability benefits. The Commissioner filed her Answer (#16) on March 5, 2013. Plaintiff filed his Motion for Reversal (#19) on April 11, 2013. The Commissioner filed her Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Summary Judgment (#21) on May 13, 2013. Plaintiff filed his Reply (#22) on May 31, 2013.

## BACKGROUND

### A. Procedural History

On September 8, 2009, the Plaintiff filed an application for supplemental social security income alleging disability beginning January 1, 2000. (A.R. 25) The agency denied Plaintiff's application initially on November 12, 2009, and upon reconsideration on April 7, 2010. *Id.* Plaintiff requested a hearing before an ALJ. (A.R. 25) The hearing was conducted on April 20, 2011 and Plaintiff appeared and testified. (A.R. 37-53) A vocational expert, Ken Lister also testified at the hearing. *Id.* The ALJ issued his decision on April 26, 2011 and concluded that Plaintiff was not disabled since September 8, 2009, the date his application was filed. (A.R. 25-

31) Plaintiff's request for review by the Appeals Council was denied on March 29, 2012. (A.R. 1-5) Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B.     Factual Background

The medical evidence in the record shows that Mr. Levi was seen by Elleston Rucker, M.D. at the University Medical Center Lied Adult Outpatient Clinic (OPC) on October 22, 2009. According to the "History of Present Illness" taken by Dr. Rucker on that date:

> The patient is a 41-year-old African American male who is seen to reestablish care. Patient was last seen 3 years ago. Patient was in the process of applying for disability at that time. However, the patient had gotten into some sort of legal problem and was incarcerated for the last 2-1/2 years. Patient states that he got out of prison 1 month ago. Patient is wishing to reopen his disability applications and go from there.

(A.R. 209)

Dr. Rucker noted that Plaintiff's past medical history was remarkable for recurrent fractures of his right forearm and wrist which began when he was 18 or 19 years old and subsequently resulted in the foreshortening of the right forearm and chronic pain to the right forearm and wrist. He also now had "some atrophy of his interosseous muscles of his right hand." (A.R. 209) Dr. Rucker further stated: "The patient's past medical history is also remarkable for situational anxiety and depression now since his incarceration and chronic problems with his right arm." (*Id.*) Dr. Rucker also stated that Plaintiff had hypertension. Dr. Rucker did not know if this was "a one-time thing, but he has not previously had a problem with hypertension." (*Id.*)

On physical examination, Dr. Rucker found that Plaintiff had foreshortening of the right forearm, tenderness diffusely over the distal forearm and wrist and atrophy of the right hand interosseous muscles. Dr. Rucker's Assessment of Plaintiff was as follows:

> Patient is totally disabled partially due to his arm, chronic pain and atrophy of muscles to the right hand and partially due to his mental state. Patient is significantly depressed and has been so, in my opinion, for the last several years. The patient also with situational anxiety and depression.

(A.R. 209-210)

Dr. Rucker next saw Plaintiff on February 1, 2010. (A.R. 274-275) He again noted Plaintiff's physical disability relating to his right arm, wrist and hand. He stated that "Patient has been incarcerated for the past 3 years. And due to his chronic problems with his right arm and hand also has situational anxiety and depression." (A.R. 274) Under "Social History" Dr. Rucker noted that Plaintiff "lives in an apartment with his mother and her boyfriend and the fact that he is unable to contribute financially is an increasing stress." (*Id.*) Under Assessment, Dr. Rucker noted that Plaintiff had chronic pain and was opiate dependent. Dr. Rucker referred Plaintiff to "Las Vegas Mental Health" for his situational stress and anxiety. (A.R. 275)

Dr. Rucker next saw the Plaintiff on February 16, 2010. He noted that "Patient is here to get disability statement. The patient has been totally disabled since 2004, says that was the last time he was able to work a full-time job." (A.R. 278) Dr. Rucker again summarized the condition of Plaintiff's right arm and hand and stated: "Patient has also become increasingly depressed because of this problem and his inability to get a job as well as his social situation." (*Id.*) Dr. Rucker assessed Plaintiff's mental condition as "severe depression and possibly post-traumatic stress disorder. This may have been exacerbated by his incarceration." (*Id.*) He again referred Plaintiff to Mental Health.

Plaintiff saw Dr. Rucker on April 13, 2010, who again noted Plaintiff's disability due to his right arm condition and his severe mental depression. (A.R. 283-284) Dr. Rucker added that Plaintiff "[a]lso suffers from problems with hypogonadotropic, low testosterone level which fuels the depression, and patient is a very poor prospect for any type of improvement until he gets surgery of right forearm, hand, and wrist." (A.R. 283) Thereafter, Dr. Rucker saw Plaintiff on June 8, 2010, July 29, 2010 and September 21, 2010. (A.R. 287, 291-292, 295-26) There was no apparent change in Dr. Rucker's findings or assessment of Plaintiff's physical and mental condition during these visits.

Plaintiff was referred to Dr. Verna Fabella-Hicks by the Nevada Bureau of Disability Adjudication for a psychological evaluation on March 16, 2010. (A.R. 243-247) Dr. Fabella-Hicks stated that Plaintiff arrived on time for his appointment and was capable of completing the intake process independently. Plaintiff was nicely dressed and sufficiently well groomed. Dr. Fabella-

1    Hicks asked Plaintiff to describe his current problem or condition.  Plaintiff stated that he has "13
2    pins and two plates in my right wrist and its shorter than my left arm." (A.R. 243)  Plaintiff stated
3    that he first injured his arm in 1992 in a workplace accident.  He stated that he was unable to lift his
4    right hand and arm and had problems with turning his right hand and arm, and experienced
5    numbness.  (*Id.*)
6        Dr. Fabella-Hicks' report further states:
7            When asked about any problems with his mental health, Angelo
             replied, "I have no problems with depression or anxiety, none at all.  I
8            was in a cell smaller than this (room) and I didn't lose my mind then.
             So I think I'm perfectly fine."  Angelo reported that he has never had
9            any mental health treatment.
10   (A.R. 243)
11       Plaintiff stated that he began using marijuana and alcohol in 2000 and used both regularly
12   until his incarceration in 2006.  He last used marijuana or alcohol in December 2009.  Plaintiff
13   stated that he had been attending drug/alcohol group counseling at the Las Vegas Indian Center so
14   that he could qualify for food stamps.  Plaintiff also provided information regarding his criminal
15   record. (A.R. 243)
16       Plaintiff reported to Dr. Fabella-Hicks that he had mild pain in his head for two to four
17   years which occurs monthly.  He takes medication and uses heat treatment to reduce the pain.
18   (A.R. 244)  Plaintiff completed the eleventh grade in high school.  He attended all "special ed"
19   classes and described himself as a below average student.  His primary past occupation had been as
20   a cook and kitchen worker.  Plaintiff indicated that he had applied for disability, could not work at
21   all, and did not plan to return to work.  (A.R. 244)
22        Plaintiff stated that he gets up at 5:00 A.M., and goes to class at the Las Vegas Indian
23   Center two days a week.  His afternoon activities included reading or writing and he watches
24   television during the evening.  Plaintiff indicated that he sleeps well.  He was able to cook, wash
25   dishes and go out for walks.  He could also go shopping alone and make his own shopping list.
26   Plaintiff was able pay the right amount and count change.  Plaintiff stated that he is able to bath and
27   dress himself and take care of his clothing.  (A.R. 244-245)
28   . . .

4

Dr. Fabella-Hicks describes Plaintiff's mood as pleasant and stable. His affect was appropriate and consistent with the content of the conversation. Plaintiff stated that he had "been going through this disability and money's been tight and I have some type of mood swings. This here is depressing. You have a lot of let downs. The class helps me out too because I can talk about the things I'm going through. I'm staying with my mom and her boyfriend, that's where the problem is. Other than that, I'm doing good." (A.R. 245)

Dr. Fabella-Hicks noted that Plaintiff's facial expressions and motor activity were not excessive. His interaction style was friendly. Speech quality was steady in rate and volume. His speech pronunciation was clear. Plaintiff showed difficulty in finding words. He denied any suicidal or homicidal ideation. (A.R. 245) Dr. Fabella-Hicks evaluated Plaintiff's cognitive function by examining his ability to count forwards and backwards and perform simple addition and multiplication. (A.R. 245) He performed poorly on parts of the examination. He was alert throughout the evaluation and appeared motivated to do well and displayed satisfactory effort. Dr. Fabella-Hicks judged his short-term memory to be marginal. His intermediate memory was judged to be well below average limits. (A.R. 246)

Dr. Fabella-Hicks concluded that Plaintiff would have difficulty carrying out tasks that required the ability to understand, remember and carry out an extensive variety of complex instructions. She also found that he would have difficulty understanding, remembering and carrying out detailed instructions. She opined, however, that Plaintiff could perform tasks that required him to understand, remember and carry out simple one or two-step instructions. (A.R. 246-247) In assessing Plaintiff's ability to maintain concentration and attention sufficient to carry on specific tasks, Dr. Fabella-Hicks stated:

> The claimant showed some evidence of mild to moderate attention difficulties in the following areas: digit span, serial seven subtractions, alphanumeric counting, short term memory recall, and delayed memory recall. Angelo had no problems with maintaining concentration and attention for simple tasks.

(A.R. 247)

. . .

. . .

Her prognosis was as follows:

> The claimant is primarily reporting disability due to his physical condition. It is recommended that the disability officer refer Angelo to an appropriate medical specialist to determine the degree of disability associated with his physical symptoms. According to Angelo's report, he is not experiencing any problems with depression and anxiety, although his medical records reported he had situational depression and anxiety in October 2009. Based on the evaluation, Angelo is cognitively and psychologically capable of doing simple tasks and would seem to be able to maintain employment. However, he indicated that his problems with his right arm and hand would interfere with his ability to work.

(A.R. 247)

Dr. Jocelyn Fuller, Ph.D rated Plaintiff's functional limitations resulting from his mental disorders as documented in the records. She rated Plaintiff as having mild limitation in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (A.R. 259)

Dr. Fuller also provided a mental residual functional capacity assessment. (A.R. 263-265) Under "Understanding and Memory," Dr. Fuller found that Plaintiff's ability to remember locations and work-like procedures, and his ability to understand and remember very short and simple instructions were not significantly limited. Under "Sustained Concentration and Persistence," she found that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to make simple work-related decisions, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest breaks. Dr. Fuller found, however, that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. (A.R. 263-264)

Dr. Fuller also found that Plaintiff was not significantly limited in regard to his ability to engage in social interaction or to adapt and respond appropriately to changes in the work setting, to

1  be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use
2  public transportation, and to set realistic goals or make plans independently of others. (A.R. 264)
3        Dr. Fuller concluded that Plaintiff was able to understand and remember work locations and
4  procedures of a simple, routine nature involving 1-2 step job tasks and instructions; that he was
5  able to maintain concentration and attention above 2 hour increments and would be able to sustain
6  8 hr/40 hour week work schedules on a sustained basis; was able to relate to and accept directions
7  from supervisors, and would be able to remain socially appropriate with co-workers and the public
8  without being distracted by them; and was able to travel, avoid workplace hazards, and respond to
9  change and set realistic goals independently. (A.R. 265)
10        At the April 20, 2011 hearing before the ALJ, Plaintiff's counsel asked Mr. Levi when was
11  the last time he was able to work full time. Plaintiff responded that he last worked in 2005. (A.R.
12  39) When asked why he had been unable to work since that date, Plaintiff responded:

> A.   Well, I caught a little case in 2000 -- I think 2005, 2006 that got me incarcerated for two-and-a-half-years. And the other two-and-a-half, the other two, three years that I've been out, I've been doing Disability.
>
> Q.   So, why do you think you can't work now?
>
> A.   Well, first of all, I'm an ex-felon, and I've got two strikes against me, and it would be hard for me to get a job. Second of all, I can't use but one hand. I can't use my right hand. I've got -- I can't too much moving of this one.

19  (A.R. 39-40)
20        In regard to his right arm and hand, Plaintiff testified that his doctors had talked to him
21  about having surgery, but he was "kind of scared" about having surgery. (A.R. 40-41) Plaintiff,
22  who is left-handed, testified that despite his right arm and hand limitations, he is able to "do little
23  things around the house." He can fold laundry, but he does not wash dishes. (A.R. 42)
24        Plaintiff testified that he gets headaches "a lot" which he attributes to stress. He testified
25  that when the headaches come, they are real bad and he sometimes has to lay down for the whole
26  day. (A.R. 44) Plaintiff indicated that he did not believe he had problems concentrating. (A.R.
27  45) He does not like to be in crowds or around people. (A.R. 46)
28  . . .

1   Plaintiff testified that he has not sought mental health treatment. When asked if anyone
2   recommended that he do so, Plaintiff responded:

> A.  No. Dr. Rutker [PHONETIC] did, when he -- he wanted me to go for depression, and I'm not depressed. But he said -- the way he broke it down to me, depression is a whole bunch of different stages, so I don't know which one that would be. I guess me being depressed going through this situation right here, not having no income coming in, not being able to go get a job or not being stable. I mean, that's depression and stress right there.

(A.R. 46)

Plaintiff's attorney noted that Dr. Rucker had stated that Plaintiff needs surgery on his right forearm and that he was a poor prospect for any type of improvement until he gets the surgery. (A.R. 52) Under further questioning by the ALJ, Plaintiff testified that he was scared about having surgery and had not decided whether to pursue surgery. (*Id.*)

Ken Lister, a vocational expert, testified at the hearing. (A.R. 48-51) Mr. Lister testified that Plaintiff's past work included that of fast food worker cook, kitchen helper, or production assembler. (A.R. 48-49) The ALJ questioned Mr. Lister as follows:

> Q.  Okay. All right. What I do have is a 42-year-old man and Dr. Rutker is his treating doctor, and he says he's unable to use his right hand and arm. However, he needs surgery to both his -- to his right wrist and arm. His left arm is not a problem. Basically, what I've got is a one-arm man. His dominant hand is the good one.
>
> A.  Right.
>
> Q.  Are there positions you would think he could perform? Well, first of all, can he do any of his past work?
>
> A.  It would appear that he has been able to do some of that work, Your Honor, over time, utilizing both hands. He must have used them in order to perform the work that he has performed.

(A.R. 49)

The ALJ then confirmed with Plaintiff that he was not presently working and had not worked in the last five years. (A.R. 49-50) The ALJ then stated to Mr. Lister that Plaintiff's left hand is okay, "his right hand is limited or that's it. Are there positions you think he can work to do, perform?" (A.R. 50). Mr. Lister responded as follows:

8

|   |   |   |
|---|---|---|
| 1 | A. | Well, I think he's testified he's done production assembly. |
| 2 | Q. | Okay. |
| 3 | A. | And that's at a frequent, frequent, frequent level, Your Honor. |
| 4 | Q. | How many of those are there?  Well, I shouldn't say that. He's done that.  Okay, I'm going to say, are there other positions, do you think? |

Mr. Lister testified that there were a couple of examples of jobs that Plaintiff could do with one arm.  He identified the job of "surveillance system monitor" which is a sedentary, unskilled occupation at SVP level 2, for which there are approximately 150,000 jobs available in the national economy. (A.R. 49-50)  Mr. Lister also identified the job of a call-out operator which he testified is a sedentary, unskilled occupation at SVP level 2, and for which 218,000 jobs exist in the national economy.  (A.R. 51)

### C. Administrative Law Judge's April 26, 2011 Decision

The ALJ applied the five-step sequential evaluation process established by the Social Security Administration in determining whether Plaintiff was disabled.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since September 8, 2009, the date of his application.  (A.R. 27-28.)  Second, the ALJ found that Plaintiff had the following severe impairment:  status post fractured right wrist.  The ALJ discussed the opinion of Dr. Rucker regarding Plaintiff's severe depression and anxiety, but found that Plaintiff's mental state did not constitute a severe impairment. (*Id*.)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).  (A.R. 28)  The ALJ found that while Plaintiff does have a nonunion of the right wrist, he had not followed his treating physician's recommendation for surgery and had never gone to physical therapy.  (*Id*.)

Fourth, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR 416.967(a).  (A.R. 29-30)  In reaching this conclusion, the ALJ stated:

. . .

>Giving the claimant benefit of the doubt, the Administrative Law Judge finds that because of limitations with the right upper extremity, the claimant is limited to sedentary level work and he does have limited use of the right upper extremity for fine and gross manipulation. The claimant has full use of the left upper extremity.

(A.R. 30)

In concluding that Plaintiff's depression and anxiety was not disabling, the ALJ stated as follows:

>Alleged depression, anxiety and problems interacting with people are not supported by the medical evidence. Dr. Rucker recommended the claimant seek mental health treatment (Exh. 11F). Again, the claimant did not follow through with treatment so there are no mental health treatment notes of record. Dr. Fabella-Hicks did not find evidence of a severe mental impairment. In fact, Dr. Fabella-Hicks did not find a severe mental impairment and said that the claimant could interact appropriately with supervisors, co-workers and the public.

(A.R. 30)

The ALJ further stated:

>Little weight is given to Dr. Rucker's statements of disability (Exh. 2F, 11F). These statements are based on the claimant's reports and not on comprehensive exams. Further the claimant has not followed through with recommended physical or mental health treatment. Regarding the alleged depression and anxiety, great weight is given to the psychological consultative exam by Dr. Fabella-Hicks (Exh. 6F) and the State Agency finding of a non-severe mental impairment.

(A.R. 30)

Fifth, the ALJ found that Plaintiff was unable to perform his past relevant work as a fast food worker (light, unskilled work); cook (medium skilled work); kitchen helper (very heavy, unskilled work); or porter (medium, unskilled work). He also found that Plaintiff was unable to perform production assembly work (light, unskilled work). (A.R. 30) The ALJ further found that Plaintiff was 40 years old at the time of his application for disability benefits, which placed him in the category of a younger individual age 18-44 (20 CFR 416.963). Plaintiff had limited education and was able to communicate in English (20 CFR 416.964). Transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled and only low end skilled (20 CFR 416.968). (A.R. 30)

. . .

10

The ALJ further found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.969 and 416.969(a)). (A.R. 30) In regard to this finding, the ALJ concluded:

> Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.24.
>
> Mr. Lister testified that the claimant can perform work doing production assembly, being a surveillance system monitor or call out operator. These jobs are sedentary, unskilled and the claimant can perform them using only his dominant left hand.

(A.R. 31)

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 9, 2009, the date the application was filed. (20 CFR 416.920(g)). (A.R. 31)

## DISCUSSION

### I.  Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450,

1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

**II.     Disability Evaluation Process**

To qualify for disability benefits under the Social Security Act, a claimant must show that:

    (a)    he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

    (b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden of proof at the fifth and final step to demonstrate that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a).

**III.    Whether the ALJ Erred at Steps Four and Five of the Sequential Evaluation Procedure.**

The issue on judicial review is whether the ALJ erred at steps four and five of the sequential evaluation. The ALJ concluded at step four that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 416.967(a). The ALJ's conclusion

was based on the physical impairment involving Plaintiff's right arm and hand.  The ALJ rejected Dr. Rucker's opinion that Plaintiff was disabled due to severe depression and anxiety because his opinion was based on the claimant's reports and not on comprehensive exams.  The ALJ, instead, accorded great weight to the opinions of Dr. Fabella-Hicks and the State Agency (Dr. Fuller) who concluded that Plaintiff had a "non-severe mental impairment." (A.R. 30)

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).   If the treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it should be afforded more weight.  20 CFR 416.927(d)(2).  The ALJ need not accept an opinion of a treating physician, however, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  If the treating physician's opinion is contradicted by another physician, then the treating physician's opinion can only be rejected by the Secretary for specific and legitimate reasons, supported by substantial evidence in the record for so doing. *Lester v. Charter*, 81 F.3d 821, 831 (9th Cir. 1996).

The ALJ did not err in rejecting Dr. Rucker's opinion that Plaintiff suffered from severe depression and anxiety.  As the ALJ stated, Dr. Rucker's reports provided little or no information as to the basis for his opinion and there is no indication that he performed any type of mental health testing or assessment.  Plaintiff did not comply with Dr. Rucker's prescription that he obtain mental health treatment or counseling.  Plaintiff denied that he was suffering from significant depression or anxiety when he was examined by Dr. Fabella-Hicks.  (A.R. 243)  He also denied being depressed at the hearing before the ALJ, although he also indicated that he experienced some "depression" related to his inability to find a job, his living arrangement with his mother and her boyfriend and his lack of financial independence.  (A.R. 46)  Based on this record, the ALJ had a reasonable basis on which to conclude that Plaintiff does not suffer from severe depression or anxiety.

. . .

The ALJ's decision regarding Plaintiff's mental impairment(s) was focused on his alleged depression and anxiety. The Plaintiff argues that the ALJ improperly rejected or disregarded Dr. Fabella-Hicks' and Dr. Fuller's opinions that Plaintiff's cognitive condition limited him to being able to follow simple one and two step instructions. *Motion for Reversal (#19), pg. 10*. Plaintiff argues that "[t]he ALJ made no findings as to why he rejected the limitations expressed by Dr. Fabella-Hicks." *Id., pg. 11*. There is nothing in the ALJ's decision that actually indicates he rejected Dr. Fabella Hicks' cognitive assessment. Although the ALJ noted her assessment in his decision, he did not analyze that assessment or state whether he accepted or rejected it. (A.R. 29-30) The ALJ also did not discuss Dr. Fuller's assessment, other than to indicate that "great weight is given to psychological consultative exam by Dr. Fabella-Hicks (Exh. 6F) and the State Agency finding of non-severe mental impairment." (A.R. 30)

The ALJ also did not discuss Plaintiff's cognitive limitations in his examination of the vocational expert, Mr. Lister. The ALJ told Mr. Lister that Plaintiff was a left hand dominant man who was unable to use his right hand and arm. He then asked Mr. Lister if there were jobs that Plaintiff could perform subject to that physical limitation. (A.R. 49-50) Mr. Lister responded that there were a couple of examples of work Plaintiff could do with one arm -- a surveillance systems monitor or a call out operator for which there are jobs available in the national economy. (A.R. 50-51) The ALJ did not question Mr. Lister further regarding either of those jobs.

The ALJ stated two basis for his conclusion that Plaintiff was not disabled. First, he concluded that a finding of "not disabled" was directed by Medical-Vocational Rule 201.24. Second, he relied on the vocational expert's testimony that Plaintiff can perform work doing production assembly, being a surveillance system monitor or call out operator. The ALJ stated that these jobs are sedentary, unskilled and Plaintiff can perform them using only his dominant left hand. (A.R. 31)

The Commissioner can meet his step five burden in two ways. He can rely on the testimony of a vocational expert or rely on the Medical-Vocational Guidelines at 20 C.F.R. pt.404, subpt. P, app. 2, to support a finding that the claimant can perform work that is available in significant numbers in the national economy. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines. When testimony of a vocational expert is used at step five, the vocational expert "must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational abilities would satisfy. 20 C.F.R. §404.1566(b)." *Id.*

In *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007), the court stated that a vocational expert is required only when there are "sufficiently severe" non-exertional limitations not accounted for in the grid. The court stated that a finding of a "severe" mental impairment at step two of the sequential evaluation process "is merely a threshold determination of whether the claimant is able to perform his past work" and does not, in and of itself, establish a sufficiently severe non-exertional impairment to require vocational expert testimony at step five. *Id.* at 1076. The court stated that "[c]learly, the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments at step two, otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made." *Id.* Based on the medical evidence in the record, the court affirmed the ALJ's finding that the claimant's depression was not a sufficiently severe non-exertional limitation that required vocational expert testimony, and therefore upheld the decision that the claimant was not disabled based on the grid.

The Commissioner relies on *Hoopai* in arguing that the ALJ validly determined that Plaintiff was not disabled by reference to Medical Vocational Rule 201.24, 20 C.F.R. Pt. 404, Subpt. 4, App. 2. The Commissioner therefore argues that any error by the ALJ in relying on Mr. Lister's testimony is harmless. If alleged depression and anxiety was the only potential mental impairment that Plaintiff has, then the ALJ would have been correct in relying on Medical Vocational Rule 201.24 which directs a finding of not disabled for a younger individual age 18-44, who is limited to sedentary work, is literate and able to communicate in English, and whose previous work experience is unskilled. The record, however, also contains Dr. Fabella-Hicks' and Dr. Fuller's opinions regarding Plaintiff's residual cognitive functional capacity. Both psychologists concluded that Plaintiff would have difficulty, or would be moderately limited, in

16

carrying out tasks that involved detailed instructions, but would be capable of performing tasks that only required him to follow simple one or two step instructions. The ALJ did not analyze these opinions in his decision and did not make a specific finding whether they support or do not support a finding of a "sufficiently severe" non-exertional impairment or limitation. The evidence indicates, however, that Plaintiff's cognitive limitations could detract from his ability to perform "the full range" of sedentary work.

According to the Dictionary of Occupational Titles ("DOT") §379.367.010, "surveillance systems monitor" is considered sedentary work and has a "Reasoning Development" level of 3. According to DOT §237.367-014, "call-out operator" is also considered sedentary work and has a Reasoning Development level of 3. As stated by the court in *Grigsby v. Astrue*, 2010 WL 309013, *2 (C.D.Cal. 2010), DOT job descriptions include a General Educational Development ("GED") definition component which embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. The GED component is comprised of three discrete scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math and language development range from Level 1 (low) to Level 6 (high).

As set forth in the Dictionary of Occupational Titles (Fourth Ed., Revised 1991), Appendix:

Reasoning Development Level 1 is defined as the ability to:

> Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Reasoning Development Level 2 is defined as the ability to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

Reasoning Development Level 3 is defined as the ability to:

> Apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Based on Dr. Fabella-Hicks' and Dr. Fuller's opinions, Plaintiff can perform work at DOT Reasoning Level of 1. It is questionable, however, whether Plaintiff can perform work at

Reasoning Levels 2 or 3.

*Hunt v. Colvin*, 2013 WL 1969401, *2 (C.D.Cal. 2013), states that "[t]here is no binding Ninth Circuit authority on the issue of whether a limitation to one-to-two step jobs is consistent with jobs described in the DOT requiring a GED reasoning ability higher than level 1 and the district courts are split on this issue." In *Grigsby v. Astrue*, the court rejected the Commissioner's argument that someone who can perform "simple and repetitive work" is not precluded from all Level 2 reasoning jobs. The court stated that "Level 2 reasoning jobs may be simple, but they are not limited to *one- or two-step instructions*. The restrictions to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning." 2010 WL 309013 at *2. In *Lee v. Astrue*, 2010 WL 653980, *10-11 (E.D.Cal. 2010), however, the court stated that "courts within the Ninth Circuit have consistently held that a limitation regarding simple or routine instructions encompasses a reasoning level of one *and two*." In support of this assertion, the court cited *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D.Cal. 2005). *Lee* indicated, however, that an individual who is limited to following simple or routine instructions would not be able to perform a job with a reasoning level of 3.

In *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), the court stated that "SSR 00-4p unambiguously provides that '[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the [*Dictionary of Occupational Titles*].' SSR 004p further provides that the adjudicator "*will* ask" the vocational expert 'if the evidence he or she has provided' is consistent with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent conflict." The court held that an ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job if the ALJ does not comply with SSR 00-4p.

In this case, the ALJ did not affirmatively ask the vocational expert, Mr. Lister, about any possible conflict between the jobs he testified Plaintiff could perform and requirements for those jobs as set forth in the DOT. Because the ALJ did not indicate that Plaintiff had any cognitive limitations in the hypothetical he posed, it is doubtful that Mr. Lister would have recognized any

conflict between his testimony that Plaintiff could work as a surveillance systems monitor or call-out operator and the DOT Reasoning Level 3 requirements for those positions.[1]

## CONCLUSION

The ALJ erred at steps 4 and 5 of the sequential evaluation process by failing to analyze and determine whether Plaintiff's residual cognitive functional capacity, as stated in the reports of Dr. Fabella-Hicks and Dr. Fuller, constitutes a sufficiently severe non-exertional impairment that precludes the use of Medical-Vocational Rule 201.24. Because he did not determine whether Plaintiff's residual cognitive functional capacity constitutes a severe non-exertional impairment, the ALJ also erred in relying on the vocational expert's testimony that Plaintiff could work as a surveillance systems monitor or call-out operator. Both of those occupations require a DOT Reasoning Development Level of 3 and it is questionable whether Plaintiff has the capacity to function at that reasoning level.

This matter should therefore be remanded for further administrative proceedings to determine whether Plaintiff's residual cognitive functional capacity constitutes a severe non-exertional impairment and, if so, whether there are any sedentary jobs available in sufficient numbers in the national economy that Plaintiff can perform. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal (#19) be **granted** and that this case be remanded to the Commissioner of Social Security for further administrative proceedings in accordance with these Findings and Recommendation.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be

---

[1] There is also some confusion or error in the ALJ's statement at page 7 of his decision (A.R. 31), that "Mr. Lister testified that the claimant can perform work doing production assembly, being a surveillance system monitor and call out operator. These jobs are sedentary, unskilled and the claimant can perform them using only his dominant left hand." At page 6 of his decision (A.R. 30), however, the ALJ stated that Plaintiff's past work included production assembly, which the ALJ classified as "light, unskilled work" that Plaintiff was no longer able to perform. Based on the ALJ's finding at page 6, Plaintiff is not able to perform production assembly work.

in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 5th day of September, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge